UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN PAUL DOTHARD,

        Plaintiff,

Case No. 1:14-cv-1152

Hon. Robert J. Jonker

v.

SUE ELSEN and
VALARIE HAMMOND,

        Defendants.

                                /

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility. This matter is now before the Court on defendant Suzanne Eisen's motion for summary judgment (docket no. 11) and defendant Valorie Hammond's motion for summary judgment (docket no. 27).[1]

    **I.**        **Plaintiff's complaint**

Plaintiff set forth the following allegations in his complaint. Plaintiff is a prisoner confined at the Richard A. Handlon Correctional Facility (MTU). He has been "a long term mental health patient for many years" with diagnoses of "manic depression, mood disorder, polysubstance dependence, intermittent explosive disorder, panic attack/anxiety and antisocial personality disorder." Compl. (docket no.1, PageID.3). Plaintiff also has a right knee torn meniscus and arthritis

---

[1] The Court notes that Ms. Eisen is incorrectly identified in the complaint and the caption of this action as "Sue Elsen" and that NP Valorie Hammond is incorrectly identified in the complaint and the caption of this action as "Valarie Hammond."

condition which he treats with "in-room Tylenol." *Id.* The present lawsuit arises from the following incident:

> On December 6, 2013 I had some Tylenol diluted in water in a cup and syringe on my desk as I was contemplating on injecting that Tylenol into my knee as I was at that time experiencing uncontrollable pain. The next day chief mental health director Sue Eisen and psychiatrist Valarie Hammond discontinued my mental health medications without justification, not following procedure and being deliberately indifferent to my serious medical condition and need.

*Id.* After this incident, plaintiff sent numerous medical requests to mental health for someone to evaluate him but his requests were not answered. *Id.* Plaintiff then filed a grievance against defendants Eisen and Hammond for not responding to his medical requests. *Id.*

On November 10, 2014, plaintiff filed the present action against Eisen and Hammond because he allegedly suffered injuries "since the above defendants illegally discontinued my mental health medications and kick[ed] me out of the mental health program." *Id.* at PageID.2. Plaintiff alleged that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Plaintiff also alleged that defendants caused physical injury and the intentional infliction of emotional distress. *Id.* at PageID.3. Plaintiff seeks "injunctive relief ordering said defendants to place me back on effective medications and psychological counseling as well as financial compensation." *Id.*

## II. Defendants' motions for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

2

Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.     Plaintiff's Eighth Amendment claims

#### 1.     Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468

U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff has alleged that defendants were deliberately indifferent to his serious medical needs. It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not

4

constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 2. The medical record

In his complaint, plaintiff alleged that defendant Eisen discontinued his medication. The record reflects that defendant Valorie Hammond, NP, entered a medication order on December 9, 2013 to decrease Wellbutrin (Bupropion) "to discontinue" and to "Crush any Psych meds." Medical Records (docket no. 17, PageID.102). NP Hammond discontinued plaintiff's medication for the following reason:

> The patient was caught injecting medication he is on two antidepressants. Will start the titration of Wellbutrin due to the abuse potential and the Celexa will be crushed. There is not a diagnosis to substantiate the use of two antidepressants in this patient.

*Id.* at PageID.103.

The history of plaintiff's present illness noted that he did not have a major mood disorder, all of his symptoms sprung from anxiety, substance abuse and sociopathy, as well as a diagnosis of panic disorder. *Id.* at PageID.106. The record reflects that in an assessment from December 9, 2013, plaintiff had a history using illicit drugs since age 12 and was placed in segregation for "shooting up drugs." *Id.* Plaintiff had been on OREM (outpatient in remission) status and was to be moved back to OPT (outpatient mental health treatment) status due to his non-compliance. *Id.* at PageID.108. The discharge planning for plaintiff was prepared by Kari D. Nader, MA (staff responsible) and Valorie Hammond, NP (provider), and stated that "[p]risoner may be discharged from mental health services once he is stable off medication, does not have a MMD and

is able to maintain a GAF over 61." *Id.* Defendant Eisen did not prepare or generate this treatment plan. *Id.*

Regarding plaintiff's antidepressant medication (Effexor), a subsequent review by NP Hammond on December 11, 2013 noted:

> The patient is seen today in the seg unit at MTU. [H]e is in seg for injecting his medication in the yard. [H]e would not say what meds he was injecting. He became angry when I informed him that his Effexor would be titrated to be removed. I explained to him tha[t] the drug has a high risk for abuse and he was caught abusing drugs. [H]e does not have a diagnosis to support the continued use of this medication with the event that has occur[r]ed. The risk out weighs the benefit.

*Id.* at PageID.111. NP Hammond prescribed plaintiff a number of medications after this date. *Id.* at PageID.115. The record reflects that defendant Eisen was on the two person "Review Team" with psychologist K. Nader that reviewed the treatment plan on December 18, 2013. *Id.* at PageID.118. The recommendation was "continue treatment plan above, addressing substance abuse, and following up with provider on his mis-use of medication." *Id.* at PageID.118-119.

On January 14, 2014, Nader noted that plaintiff continued to send multiple kites a week stating that he would like to be seen by Mental Health staff, but that he would fail to show up for his call outs. *Id.* at PageID.124. Ultimately, on January 23, 2014, plaintiff was discharged from outpatient patient therapy for regression. *Id.* at PageID.130. The medical provider, Jay Choi, M.D., noted that since arriving at MTU, plaintiff "has been caught shooting his medication in the yard," "has little to no insight into his drug problems, and no motivation to work on these problems." *Id.* Dr. Choi noted that plaintiff's medical provider discontinued his medication after documenting that the risk versus benefit of keeping him on the medications. *Id.* In this regard, Dr. Choi noted that

6

plaintiff "is not working on his goals through talk therapy" and that he "has been abusing medication, and attempting to use intimidation with staff to get more medication." *Id.* The doctor concluded:

> He is not mentally ill. His behavioral problems stem from Axis II criminal thinking and thought distortions. He will be discharged from the OPT. Mr. Dothard is aware of how to contact MHS [Mental Health Services] in the future, should the need present.

*Id.* Plaintiff continued to be monitored, including being seen by a psychologist. *Id.* at PageID.133. A subsequent review by another provider noted, "[d]espite plaintiff's demands for medication, he reports no symptoms to support such a need." *Id.* at PageID.140. Plaintiff continued to receive psychological care after his discharge from OPT. *Id.* at PageID.143-172.

### 3. Defendant Eisen

In her affidavit, defendant Eisen, as the Unit Chief at MTU, stated that she did not discontinue plaintiff's medication because "[a]s a former Unit Chief I did not have the authority to discontinue prisoner medication." Eisen Aff. (docket no. 12-1). Ms. Eisen is a licensed social worker with a master's degree. *See* https://w2.lara.state.mi.us/VAL/License/Details/442708. As a social worker, she is not authorized to prescribe medication. *See* M.C.L. § 333.18501(5) ("The practice of social work at the master's level does not include the practice of medicine or the practice of osteopathic medicine and surgery, including, but not limited to, the prescribing of drugs or administration of electroconvulsive therapy.").

In his response, plaintiff agreed that Ms. Eisen does not prescribe medication. Nevertheless, plaintiff stated that the gravamen of his claim against Ms. Eisen is that as Mental Health Unit Chief, she was a member of the review team in his case and was "instrumental in

discontinuing [his] medications and kicking [him] out of the mental health program." Plaintiff's Response (docket no. 24, PageID.190-191).

It is undisputed that Ms. Eisen had no authority to prescribe plaintiff's medication. The decision to discontinue Effexor was made by NP Hammond. While Ms. Eisen was part of the team who reviewed plaintiff's treatment plan, she did not develop the plan or "kick" plaintiff out of any program. It was Dr. Choi who signed plaintiff's discharge from OPT. The record does not support plaintiff's claim that Ms. Eisen was deliberately indifferent to his serious medical needs. Accordingly, defendant Eisen's motion for summary judgment should be granted.[2]

### 4. Defendant Hammond

Assuming, for purposes of this report, that plaintiff met the objective prong of an Eighth Amendment claim, there is no evidence that NP Hammond met the subjective prong of this constitutional violation, i.e., that Hammond knew of and disregarded an excessive risk to plaintiff's health or safety. *See Farmer*, 511 U.S. at 837. As discussed, *supra*, the medical records reflects that NP Hammond treated plaintiff's medical condition and that Hammond's decision to discontinue the medication was based upon her medical judgment considering plaintiff's diagnosis and medical history. In this regard, it was Dr. Choi, not NP Hammond, who made the decision to discharge plaintiff from OPT. *Id.* at PageID.130-131.

Furthermore, plaintiff's claim against NP Hammond amounts to a difference of opinion on whether plaintiff should continue to receive a particular medication and the appropriate treatment for his mental condition. "[W]here a prisoner has received some medical attention and the

---

[2] Because the undersigned determined that there was no constitutional violation, it is unnecessary to address defendant Eisen's qualified immunity defense.

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004), quoting *Westlake*, 537 F.2d at 860 n. 5.  Here, the record reflects that plaintiff received medication and treatment for his condition which was adjusted, in part, because he was caught injecting himself with medication. While plaintiff disagrees with defendants' medical judgment and wants to have treatment contrary to that judgment, this disagreement does not rise to the level of a federal constitutional claim. *See Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"); *Wright v. Genovese*, 694 F.Supp.2d 137, 155 (N.D.N.Y. 2010) ("[d]isagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment").  The record does not support plaintiff's claim that NP Hammond was deliberately indifferent to his serious medical needs.  Accordingly, defendant Hammond's motion for summary judgment should be granted.

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that the motions for summary judgment filed by defendants Eisen and Hammond (docket nos. 11 and 27) be **GRANTED** and that this action be **TERMINATED**.

Dated: February 8, 2016   /s/ Ray Kent
Ray Kent
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).